IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| ADAM R. MCKEE,<br><br>                    Plaintiff,<br><br>vs.<br><br>ANDREW SAUL, *Commissioner of Social Security Administration*,<br><br>                    Defendant. | CV 19-84-BLG-TJC<br><br><br>**ORDER** |

Plaintiff Adam R. McKee ("McKee") has filed a complaint pursuant to 42 U.S.C. §§ 405(g), 1383(c) of the Social Security Act, requesting judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner"), denying his claim for disability insurance benefits under Title II, and supplemental security income under Title XVI, of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433, 1381-83f.  (Docs. 2, 11.)  The Commissioner subsequently filed the Administrative Record ("A.R.").  (Doc. 9.)

Presently before the Court is Plaintiff's motion for summary judgment, seeking reversal of the Commissioner's denial and remand for further proceedings. (Doc. 11.)  The motion is fully briefed and ripe for the Court's review.  (*See* Docs. 12, 13.)

1

For the reasons set forth herein, and after careful consideration of the record and applicable law, the Court finds this matter should be REMANDED for further proceedings.

## I.   PROCEDURAL BACKGROUND

McKee filed his application for disability insurance benefits on December 20, 2016 and supplemental security income on December 29, 2016.  (A.R. 180.) The Social Security Administration initially denied McKee benefits on February 17, 2017.  (A.R. 121.)  McKee subsequently requested a hearing by an Administrative Law Judge ("ALJ").  (A.R. 124.)  A hearing was held on September 27, 2018.  (A.R. 41.)  ALJ Mary J. Leary issued a written decision on January 30, 2019, finding McKee not disabled.  (A.R. 32-33.)  McKee requested review of the ALJ's decision before the Appeals Council, but the request was denied.  (A.R. 1.)  McKee thereafter filed the instant action.  (Doc. 2.)

## II.   LEGAL STANDARDS

### A.   Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope of judicial review is limited.  The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error."  *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  *See*

*also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is not supported by substantial evidence."); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten*, 44 F.3d at 1457. In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)). The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary."). However, even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion. *Benitez v. Califano*, 573 F.2d

653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

## B.   Determination of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) he suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work he previously performed, or any other substantial gainful employment which exists in the national economy.  42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A).  A claimant must meet both requirements to be classified as disabled.  *Id*.

The Commissioner makes the assessment of disability through a five-step sequential evaluation process.  If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin*., 223 F.3d 968, 974 (9th Cir. 2000).  The five steps are:

1. Is claimant presently working in a substantially gainful activity?  If so, then the claimant is not disabled within the meaning of the Social Security Act.  If not, proceed to step two.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe?  If so, proceed to step three.  If not, then the claimant is not disabled.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1?  If so, then the claimant is disabled.  If not, proceed to step four.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is not disabled.  If not, proceed to step five.  *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work?  If so, then the claimant is not disabled.  If not, then the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

## III.   FACTUAL BACKGROUND

### A.   The Hearing

A hearing was held before the ALJ on September 27, 2018 in Springfield, Missouri.  (A.R. 41-87.)  At the hearing, McKee testified to his current situation as divorced, unemployed, and receiving food stamps and Medicaid.  (A.R. 50-52.) McKee had not held a job since alleging disability on November 28, 2016.  (A.R. 53.)  Prior to unemployment, McKee held a wide variety of jobs at restaurants, a car dealership, Wal-Mart, Roto Rooter, his father's dental lab, and a trucking company, where he sustained a head injury in an accident.  (A.R. 53-58.)

As to his everyday activities, McKee testified to an independent lifestyle that includes daily walks, self-care, playing video games and watching TV, doing

laundry, and cleaning with some difficulty with his shoulder injury and associated pain.  (A.R. 61-65.)  He also testified that he drives sparingly.  (A.R. 64.)

McKee testified next that he takes prescribed medications for depression, anxiety, memory loss, urinary incontinence, and Tourette's syndrome, as well as other over the counter pain medications.   (A.R. 69, 71.)  McKee believes the medications help but he acknowledged side-effects such as sleeplessness and sore muscles.  (*Id.*)  McKee clarified that while he took medication for ADD or ADHD in the past, he is currently not medicated for attention deficit.  (A.R. 73.)  He did testify, however, that anxiety and depression medications help with his focus.  (*Id.*)

McKee's also testified to his physical and mental impairments, including nocturia, walking with a pain, depression, anxiety, and traumatic brain injury with a mild cognitive disorder.  (A.R. 71-72.)

As to McKee's limitations, he testified that he could sit for a few hours at a time, stand for a half hour, and lift 20 pounds.  (A.R. 74.)  McKee stated that he has a hard time with job training and memory, leading to repetitive questioning which causes frustration for him and his employers.  (A.R. 73.)  The ALJ inquired whether McKee could perform a job doing one thing repetitively, to which McKee responded that it would be "extremely hard" because of his "attention."  (*Id.*)  "I have a really hard time focusing on one task.  I've had that issue since I've been a child."  (*Id.*)

6

Last, the vocational expert ("VE"), Jacqueline Crawford, summarized McKee's work history, rated them per DOT categories, and opined three jobs in the national economy existed under the hypothetical posed: marker, routing clerk, and router.  (A.R. 79-81.)  The ALJ then posed the same hypothetical but limited the hypothetical to sedentary work.  (A.R. 82.)  The VE opined such an individual could perform the work of a document preparer, touchup screener, and table worker.  (*Id.*)

**B.    Medical Evidence**

McKee's medical evidence is extensive, and the record includes a multitude of healthcare providers.  For purposes of the instant matter, the Court will briefly review the medical records of the providers at issue.

1.    *Thomas A. Blansett, Ph.D.*

Dr. Blansett is a licensed psychologist that conducted a series of neuropsychological evaluations with McKee in January and February 2017.  (A.R. 849.)  In total, Blansett examined McKee three times and administered nineteen psychological and neuropsychological tests.  (A.R. 849, 853.)  Tests included speed of cognitive processing, attention and concentration, sensorimotor skills and abilities, visuospatial functioning, language functions, intellectual functions, achievement functioning, learning and memory, executive functioning, and personality and emotional functioning.  (*See* A.R. 853-858.)  Some tests showed

7

average, above average, and even superior results, while others showed deficits and significant difficulties.  (*Id.*)

Blansett diagnosed McKee with several clinical disorders: post-traumatic stress, depressive, mild neurocognitive, attention deficit/hyperactivity, specific learning, autism spectrum, and persistent motor tic.  (A.R. 859.)  He further found that McKee needs continued psychological/psychiatric intervention, medication management for PTSD and depression, and pain management assessment and treatment.  (*Id.*)  Based on the tests, diagnoses, and findings, Blansett made seven recommendations: (1) medication management to increase cognitive efficiency and sustain attention and concentration; (2) further evaluation to assess sensorimotor skills, confrontational naming abilities, and communication; (3) treatment for pain management, for PTSD and depression, and for speech language pathology; (4) continued psychotherapeutic support; (5) addressing goals for continued vocational involvement given cognitive deficits; (6) maintain efforts to obtain Social Security Disability; and (7) referral to neurologist for evaluation of motor tic disorder and incontinency.  (A.R. 860-861.)

### 2.    *Dale Halfaker, Ph.D*

Dr. Halfaker is a neuropsychologist who performed a consultative examination of McKee in June 2017 and then completed an extensive report of his findings in July 2017.  (A.R. 874-900.)  As part of the examination, Halfaker

reviewed numerous case-related documents and integrated the information into an assessment.  (A.R. 876-877.)  It appears, however, that pages 35 – 49 of his report were omitted from the record.  (*C.f.* A.R. 897 and 898.)  The report picks up at page 50 with what appears to a summary conclusion that Halfaker considers "Mr. McKee to be at maximum neuropsychological improvement with regard to work-related diagnoses listed above."  (A.R. 898.)  It is unclear to which "work-related diagnoses listed above" Halfaker referred.  (*Id.*)  Nevertheless, his conclusions also include the opinion that "when the result of the combination of all the sources of neuropsychological disability is considered that Mr. McKee comes close to being permanently, totally disabled."  (A.R. 899.)

Halfaker also subsequently completed a medical source statement relating to McKee's medically determinable mental impairments on August 24, 2017. (A.R. 867-872.)  The form statement posed twenty questions in four categories: understanding and memory; sustained concentration and persistence; social interactions; and adaptation.  (A.R. 868-871.)  Halfaker answered either "not significant," defined as "ability to function in this area is limited but satisfactory," or "sometimes," defined as "generally acceptable but would have lapses for 15-20% of an eight-hour workday."  (A.R. 868.)  Halfaker checked "sometimes" for 15 of 20 question.  (A.R. 868-871.)  When "sometimes" was checked, the form requested an explanation of "clinical signs, finds [*sic*], and other factors

substantiating your conclusion." (See e.g. *Id.*) Halfaker did not present

explanations for any boxes checked "sometimes." (*See generally* A.R. 868-871.)

Halfaker also concluded, however, that McKee did not have the capacity to carry

out simple instructions; make judgments that are commensurate with functions of

unskilled work; or deal with changes in a routine work setting. (A.R. 872.)

Halfaker thought McKee's restrictions would be expected to last one year or

longer. (*Id.*)

       3.    *Aroon Suansilppongse, M.D.*

Dr. Suansilppongse is a consulting, nonexamining physician that conducted

a mental residual functional capacity assessment nearly identical to the form

medical source statement filled out by Dr. Halfaker. (A.R. 937-939.)

Suansilppongse found McKee "not significantly limited" in the majority of

categories and also provided a short, two-paragraph summary assessment at the

end of the form. (*Id.*) He also summarized his functional capacity assessment of

McKee, finding he does not meet or equal any Listing; he has the mental capacity

for simple work related activity with infrequent contact with coworkers and the

public; and his allegations are supported and not inconsistent with medical

evidence (A.R. 939.)

/ / /

/ / /

### C.    The ALJ's Findings

The ALJ followed the five-step sequential evaluation process in considering

McKee's claim.  (A.R. 16.)  First, the ALJ found that McKee had not engaged in

substantial gainful activity since his alleged onset date of November 28, 2016.

(A.R. 17.)  Second, the ALJ found McKee has the following severe impairments:

lumbar spondylosis; sacroiliitis; left hip osteoarthritis; pseudobulbar affect; major

depressive disorder; panic disorder; post-traumatic stress disorder; personality

disorder; attention deficit disorder; minor neurocognitive disorder; learning

disorder; and Asperger's syndrome, also referred to as Autism Spectrum disorder

without intellectual impairment.  (A.R. 17-18.)  The ALJ also found that numerous

impairments were non-severe, including: hyperglycemia; hypertriglyceridemia;

bronchitis; persistent upper respiratory infection; frequency nocturia; chronic

prostatitis motor tic diagnosed as Tourette's syndrome; tinea cruris; degenerative

disc disease; cervical radiculopathy; bursal sac fraying; corneal abrasion; and dry

eye syndrome.  (A.R. 18.)  Third, the ALJ found that McKee does not have an

impairment or combination of impairments that meets or medically equals the

severity of one of the listed impairments in the appendix.  (A.R. 18-20.)  Fourth,

the ALJ stated McKee has the residual functional capacity ("RFC") to perform

light work with some restrictions, including only occasionally climbing ramps and

stairs, never climbing ladders, ropes, or scaffolds; occasionally balancing,

stooping, kneeling, crouching, and crawling; avoiding concentrated exposure to vibration, frequently reaching in all directions, and all hazards such as dangerous machinery and unprotected heights.  (A.R. 20.)  The ALJ further found that McKee can tolerate occasional contact with coworkers and supervisors, no contact with the general public, limited social interaction, and can complete tasks in a relatively independent setting and in an occupation where there are no strict production quotas or no fast-paced production work.  (A.R. 21-30.)  At step four, the ALJ found that McKee is unable to perform any past relevant work.  (A.R. 30-31.)  Finally, at step five, the ALJ found that based on McKee's age, education, work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that he could perform.  (A.R. 31-32.)

Accordingly, the ALJ found McKee not disabled.  (A.R. 32.)

## IV.    Discussion

McKee argues that the ALJ erred in (1) discounting the findings, diagnoses, and objective test results of treating mental health providers; (2) discounting the credibility of his testimony; and (3) failing to incorporate all limitations into the vocational consultant's hypothetical.  (Doc. 11 at 5.)  The Court will address each in turn.

/ / /

/ / /

12

### A.    ALJ's Evaluation of Medical Source Opinions

McKee argues that the ALJ failed to give the proper weight to the findings and opinions of two mental health providers, Drs. Blansett and Halfaker.  (Doc. 11 at 22.)  McKee also asserts that Dr. Suansilppongse's opinions may not be relied upon because "there was no additional testing or examination."  (*Id.* at 27.)  The Commissioner argues that the ALJ reasonably weighed the medical opinions of Drs. Blansett, Halfaker, and Suansilppongse.  (Doc. 12 at 3-6.)

In assessing a disability claim, an ALJ may rely on "opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)."  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995.)  The Commissioner applies a hierarchy of deference to these three types of opinions.  The opinion of a treating doctor is generally entitled to the greatest weight.  *Id.*  ("As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."); *see also* 20 C.F.R. § 404.1527(c)(2).  "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician."  *Lester*, 81 F.3d at 830.

Opinions of treating and examining physicians may only be rejected under certain circumstances.  *Id.*  To discount an uncontradicted opinion of a treating or

examining physician, the ALJ must provide "clear and convincing reasons."  *Id.*
To discount the controverted opinion of either, the ALJ must provide "'specific
and legitimate reasons' supported by substantial evidence in the record."  *Id.*;
*Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *Reddick v. Chater*, 157
F.3d 715, 725 (9th Cir. 1998).  The ALJ can accomplish this by setting forth "a
detailed and thorough summary of the facts and conflicting clinical evidence,
stating his interpretation thereof, and making findings."  *Magallanes v. Bowen*, 881
F.2d 747, 751 (9th Cir. 1989).  "The ALJ must do more than offer his conclusions.
He must set forth his own interpretations and explain why they, rather than the
doctors', are correct."  *Reddick*, 157 F.3d at 725.

Here, Drs. Blansett and Halfaker are examining psychologists, and Dr.
Suansilppongse is a nonexamining physician.  The Court will address the ALJ's
treatment of each in turn.

### 1.  *Thomas Blansett, Ph.D.*

The ALJ gave little weight to the opinions Dr. Blansett made after a series of
neuropsychological evaluations in 2017.  (A.R. 29.)  In making his
recommendations, Blansett stated:

> 5.  Mr. McKee's treatment should include addressing his goals for
> continued vocational involvement in a realistic manner given his
> current cognitive deficits.  However, I do not see Mr. McKee as being
> able to return to work on a gainful and sustained basis.

14

6.  Mr. McKee should be encouraged to continue his efforts to obtain Social Security Disability because the combination of his emotional, cognitive, and physiological difficulties will undoubtedly cause him to not be able to maintain current fulltime gainful employment or fulltime gainful employment without further rehabilitation programming from a variety of sources; which he has yet to obtain.

(A.R. 861.)  The ALJ discounted Blansett's opinion because "[t]he final responsibility for determining the ultimate issue of disability is reserved to the Commissioner."  (A.R. 29.)  The ALJ also pointed to positive results from Blansett's testing, and the findings of Salvador Ceniceros, M.D., to further discount Blansett's opinion.  (A.R. 30.)

The Court finds that the ALJ failed to provide a proper analysis of Blansett's assessment and thus improperly discounted his opinion.

First, while the ALJ is not bound by Blansett's opinion on the ultimate issue of disability, she may not simply reject the opinion without providing legitimate reasons for doing so.  In *Hill v. Astrue*, a psychologist made a strikingly similar evaluation to Blansett's, finding that the combination of the claimant's mental and medical problems made "the likelihood of sustained full-time competitive employment unlikely."  *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (emphasis omitted).  The Ninth Circuit rejected the Commissioner's argument that the doctor's opinion was not binding because it related to the claimant's ability to work and was an issue reserved to the Commissioner.  *Id.* at 1160.  The court held that the psychologist's opinion was not a conclusory statement but "an assessment,

15

based on objective medical evidence, of Hill's *likelihood* of being able to sustain full time employment given the many medical and mental impairments Hill faces ….” *Id.* at 1160 (emphasis original).  The same can be said here.

Blansett similarly opined on the likelihood that McKee's combination of emotional, cognitive, and physiological difficulties “*will undoubtedly cause* him to not be able to maintain current fulltime gainful employment.”  (A.R. 861.)   This recommendation came on the heels of nineteen psychological and neuropsychological evaluations he had administered; the precise sort of objective medical evidence that the *Hill* court used to distinguish “assessment” from the “conclusory statement” that 20 C.F.R. § 404.1527(d)(1) contemplates.  *Hill*, 698 F.3d at 1160.  It is an opinion that the ALJ cannot simply dismiss as one reserved for the Commissioner.

Second, the ALJ points to McKee's average results on memory testing but ignores the results of eighteen other psychological and neuropsychological evaluations, many of which were markedly below average.  (A.R. 30; 853-858.) An ALJ is not permitted to cherry pick isolated evidence from the record but must instead consider an opinion in context of the evidence as a whole.  *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014); *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016) (“An ALJ cannot simply pick out a few isolated instances of improvement over a period of months or years but must interpret reports of

16

improvement ... with an understanding of the patient's overall well-being and the nature of her symptoms.'") (internal quotations, citations omitted); *Martinez v. Saul*, 2019 WL 4305505, at *10 (D. Idaho Sept. 10, 2019) ("The ALJ may not cherry-pick evidence to support a conclusion that a claimant is not disabled but must consider the evidence as a whole in making a reasoned disability determination.")

Finally, to the extent the ALJ relies on Dr. Ceniceros's 2018 findings to contradict Blansett's opinions, the ALJ simply recites certain findings without any discussion as to how the findings contradict Blassett's opinions. (A.R. 30.) This falls short of the requirement that the ALJ must set forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings" in order to reject the opinions of an examining physician. *Magallanes*, 881 F.2d at 751.

Thus, the ALJ failed to provide substantial evidence in the record to support discounting Dr. Blansett's opinion. Upon remand, the ALJ must consider Blansett's full medical record of evaluations and assessments, and properly weigh his opinion.

    *2.   Dale Halfaker, Ph.D.*

The ALJ assigned "less weight" to the August 2017 opinions of Dr. Halfaker. (A.R. 29.) The ALJ found that the checkbox form that Halfaker used

contained global assessment functional domains with inadequate clinical justifications; seemed to underestimate functional ability; and were inconsistent with longitudinal psychiatric history and clinical psychopathology. (*Id.*, 868-872.) The ALJ further noted that Halfaker provided no explanation for his opinions and his answers contained contradictions. (*Id.*) Last, the ALJ found that Halfaker previously evaluated McKee in June 2017, but the evaluation does not appear in the record. (A.R. 29.)

The Court finds the ALJ's assignment of less weight to Halfaker's opinions erroneous for two reasons. First, the medical source statement (i.e. checkbox form) that Halfaker prepared appears to be the culmination of an extensive psychological assessment he undertook in June and reported in July 2017. (*Cf.* A.R. 868-872 and 874-900.) But the ALJ appears to be unaware of the extensive July 2017 report in the record [Ex. 10F] and instead discounted Halfaker's medical source statement for lack of explanation. (A.R. 29.) The ALJ recognized that Halfaker did evaluate McKee, but states "this does not appear in the record," when the July 2017 report clearly exists at A.R. 874-900. (*Id.*) Thus, the ALJ's reasoning for discounting Halfaker's opinion is clearly erroneous and warrants remand for consideration of his full opinion.

Second, as mentioned in passing above, Halfaker's July 2017 report appears to be incomplete, as pages 25 – 49 were omitted from the record. (*C.f.* A.R. 897

and 898.)  The report jumps from page 24 to page 50, where Halfaker offers his summary conclusions.  (A.R. 898.)

The ALJ "has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). The ALJ's duty to further develop the record "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).  Without the complete report, Halfaker's opinions are incomplete and thus ambiguous, and the record is plainly inadequate to allow for proper evaluation of the evidence.

Upon remand, the ALJ must consider Dr. Halfaker's full medical record of evaluations, assessments, and medical source statements and properly weigh his opinion.

### 3.    *Aroon Suansilppongse, M.D.*

Dr. Suansilppongse is a non-examining physician.  The ALJ gave "considerable weight" to his opinion (A.R. 28); thus, placing greater weight on his opinion than the examining sources, Drs. Blansett and Halfaker.

As discussed above, the opinion of an examining physician generally must be afforded more weight than the opinion of a reviewing physician.  Indeed, the

Ninth Circuit has said that "the opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion [of] an examining physician…." *Lester*, 81 F.3d at 831.  The Ninth Circuit in *Lester* acknowledged, however, that there have been circumstances where the court has upheld the rejection of a treating or examining physician based in part on the testimony of a nonexamining medical advisor, pointing to two decisions where there was "an abundance of evidence" that supported the ALJ decision.  *Id.* at 831.  The court therefore concluded that "[a]n ALJ may reject the testimony of an examining, but non-treating physician, in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by *substantial record evidence*."  *Id.* at 831 (emphasis original) (internal quotations and citations omitted).

Here, the ALJ placed greater weight on Suansilppongse's opinion because "he has a thorough amount of understanding of the disability program and the evidentiary requirements and is familiar with the other information in a claimant's case record."  (A.R. 28.)  The ALJ also noted that Dr. Suansilppongse provided detailed explanations for his opinions, and his opinions and were supported by objective clinical findings, medical treatment notes, and the record.  (*Id.*)

The ALJ's reasons do not constitute specific, legitimate reasons, supported by substantial evidence.  With respect to the first reason, a physician's

understanding of the disability program and evidentiary requirements may be a factor the ALJ may consider in evaluating what weight to be given to a medical source. See 20 C.F.R. § 1527(c)(6). But it is not a reason by itself to place greater weight on a reviewing source's opinion over an examining source. If that were the case, an ALJ could always place greater weight on the agency's consulting reviewers, since they almost invariably will have a greater understanding of the disability program than a treating physician. This would effectively invert the hierarchy of deference afforded to medical opinions established by the Ninth Circuit.

Regarding the ALJ's finding that Suansilppongse provided a "detailed explanation for his opinions," the Ninth Circuit has emphasized that "[t]he weight afforded to a non-examining physician's testimony depends 'on the degree to which they provide supporting explanations for their opinions.'" *Ryan v. Commissioner of Social Security,* 528 F.3d 1194, 1201 (9th Cir. 2008) (quoting 20 C.F.R. § 404.1527[c)(3)]). In *Ryan*, for example, the Ninth Circuit found error where two non-examining doctors' assessment forms were used to reject the opinion of an examining physician. *Id.* The court noted that the forms contained no supporting explanation "whatsoever for their opinion," holding that "their bare conclusion after checking a series of boxes on the MRFCA form" did not outweigh the remaining evidence in the record. *Id.*

Here, the ALJ used Suansilppongse's opinions from a similar checkbox assessment form to discredit the opinion of an examining physician, Dr. Halfaker. (*Cf.* 868-872 and 937-938.)  The Court is unconvinced that Suansilppongse provided "detailed explanations for his opinions," as the court in *Ryan* required. Instead, Suansilppongse provided a short, two-paragraph conclusion at the end of the checkbox form, briefly summarizing his functional capacity assessment of McKee.  (A.R. 939.)  As previously discussed, Halfaker authored an extensive report (as did Dr. Blansett), which was wholly ignored.

Finally, the ALJ's finding that Suansilppongse's opinions are supported by objective clinical findings, medical treatment notes, and the record is a conclusory statement, and unsupported by any reference to the record.  (*See* A.R. 28.)

Therefore, the Court finds that the ALJ erred in assigning greater weight to Dr. Suansilppongse's opinion without providing specific and legitimate reasons that are supported by substantial evidence in the record.  On remand, the ALJ shall evaluate the medical opinions consistent with the Ninth Circuit's guidance.

## B.    McKee's Credibility

McKee argues that the ALJ's improperly discounted his testimony without providing specific, clear, and convincing reasons.  (Doc. 11 at 29.)  The Commissioner argues that adverse credibility findings need not be justified when there is evidence of malingering.  (Doc. 12 at 2.)

The Court finds the Commissioner's argument unavailing.  The ALJ did not make a finding that McKee was malingering other than to recite Dr. Nguyen's notation of "a rule out for 'malingering []for workman's compensation benefits and disability.'"  (A.R. 24.)  A notation in the record "to "R/O [rule out] malingering [,]" … is not a clear, affirmative diagnosis that [the claimant is] actually malingering."  *Cha Yang v. Comm'r of Soc. Sec. Admin.*, 488 Fed.App'x. 203, 205 (9th Cir. 2012).  No other evidence in the record supports a finding of malingering. The Court thus turns to the ALJ's assessment of McKee's testimony.

The Ninth Circuit has established a two-step analysis to determine the extent to which a claimant's symptom testimony must be credited.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ determines whether the claimant has provided objective evidence of an impairment or impairments that could reasonably be expected to produce the pain or symptoms alleged.  *Id.*; 20 C.F.R. § 404.1529(a), (c).  If the claimant does so and there is no evidence of malingering, then at the second step the ALJ evaluates the intensity and persistence of the symptoms.  *Vasquez*, 572 F.3d at 591.

To reject the claimant's testimony, the ALJ must provide "specific, clear and convincing reasons."  *Id.*  "In order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

discredit claimant's testimony.'" *Turner v. Commissioner of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010).  Thus, the ALJ's credibility determination "must be supported by specific, cogent reasons," with general findings insufficient. *Reddick*, 157 F.3d at 722; *Lester*, 81 F.3d at 834.  *See also* 20 C.F.R. § 404.1529(c)(3).

Here, the ALJ does not explicitly address step one of the two-step process but found at step two that McKee's statement's concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with medical and other evidence on the record.  (A.R. 21.)  The Court finds that the ALJ provided four specific, clear, and convincing reasons to discount McKee's testimony relating to his symptoms.

First, the ALJ points out that the type of treatment McKee received was not indicative of disabling conditions.  (A.R. 26.)  After his work-related motor vehicle accident, for example, McKee had returned to work, reported mild symptoms and was "doing fine."  (A.R. 22-23, 646, 1048, 1050.)  A subsequent follow up in July 2016 showed substantial improvement with no additional treatment necessary. (A.R. 23, 1087.)  Further, McKee's complaints of depression and anxiety resulted in conservative treatments, such as therapy and modest dosages and frequency of medication.  (A.R. 24, 26, *c.f.* 1093-1094, 1136-1137, 1694-1698.)

Second, the ALJ found that McKee's complaints of disability were inconsistent with his activities of daily living.  (A.R. 26.)  McKee testified to normal activities, including tending to personal hygiene, cooking, household chores, walking his pets in the park, grocery shopping, and driving.  (A.R. 61-65.)

Third, given these "fairly normal activities of daily living," the ALJ found the record silent as to "the extreme functional limitations" McKee alleged.  (A.R. 26.)  The ALJ noted that even after McKee filed for disability in November 2016, there were no treatment records that would suggest he experienced an increase in symptoms or a decrease in functioning.  (A.R. 23-27, 1225-1227.)  By November 2017, the ALJ notes that McKee's physical examination was "unremarkable." (A.R. 25, 1265.)  McKee also travelled between Missouri and Montana three times, twice on his own; was able to do chores for four hours a day every other day; and denied difficulty with standing, reaching, walking, sitting, climbing stairs, or using his hands.  (A.R. 26, 67, 272, 275.)

Last, the ALJ found that McKee's testimony was inconsistent regarding the need for a service dog and a wheelchair.  The ALJ points to records from Adult Tendercare Center, which show McKee's dog was not well trained and he struggled to handle it, so much so that he said he may not bring the dog to future appointments.  (A.R. 1727.)  The ALJ found this "does not suggest any significant need for a 'service dog.'"  (A.R. 26.)  In February 2018, McKee requested a

wheelchair for "transient lower extremity weakness" and "chronic pain."  (A.R. 25, 1263.)  But at the next visit in March 2018, there was no mention of a wheelchair, weakness, or chronic pain.  (A.R. 1322.)  Such inconsistencies justify the ALJ's determination of McKee's testimony relating to the intensity, persistence, and limiting effects of his physical symptoms.

Therefore, the Court finds the ALJ has provided specific, clear and convincing reasons that permit the conclusion that the ALJ did not arbitrarily discredit McKee's testimony.  Although this Court may not have evaluated the evidence in the same way as the ALJ, the Court may not substitute its own interpretation of the evidence for the ALJ's interpretation.  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (stating that as long as the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing.")

### C.    Vocational Consultant's Hypothetical

Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant.  *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).  "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'" *Magallanes*, 881 F.2d at 756 (quoting *Sample*, 694 F.2d 639, 644 (9th Cir. 1982)).  If the assumptions in the hypothetical are not supported by the record, then the vocational expert's opinion

that the claimant has a residual working capacity has no evidentiary value.

*Embrey*, 849 F.2d at 422.

McKee argues that the hypothetical the ALJ relied on to find he could perform other work at step five was deficient because it did not incorporate all of his limitations.  As discussed above, the Court has determined the ALJ failed to properly consider the examining and nonexamining physicians' opinions.  Accordingly, these errors infected the hypothetical the ALJ relied on, and in turn, the ALJ's determination that McKee could perform other work.

Therefore, the Court finds the ALJ's determination at step five is not supported by substantial evidence.

## V.        REMAND OR REVERSAL

McKee asks the Court to reverse the ALJ's decision and grant her benefits. (Doc. 11 at 32.)  "[T]he decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court."  *Reddick*, 157 F.3d at 728.  If the ALJ's decision "is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'"  *Hill*, 698 F.3d at 1162 (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)).  "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of

benefits, reversal [and an award of benefits] is appropriate." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

The Court finds remand for further proceedings is appropriate.  On remand, the ALJ shall reconsider the weight she applies to the opinions of Drs. Blansett, Halfaker and Suansilppongse, and reconsider whether McKee can perform work in the national economy based upon a hypothetical that incorporates all his impairments and limitations supported by the record.

## VI.    CONCLUSION

For the foregoing reasons, the Court orders that the Commissioner's decision is REVERSED, and this matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

**IT IS ORDERED**.

DATED this 28th day of October, 2018.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge

28